U.S. v. Fishman and Gianelli, 22, 1600, and a few other numbers. May it please the court. Hang on one more minute until those doors get closed. Sorry, just because of all the hubbub. All right, I'll hear for you, Counselor. Disappointed that they're leaving. Your Honor, I'm appellate counsel for Seth Fishman. Your Honors, a person is guilty of felony misbranding. When he intends to defraud or mislead consumers, the FDA, or possibly a state drug regulatory agency, but not racing commissions. But that's obviously not what the statute says. Pardon me? That's obviously not what the statute says. Those last words about whom is being defrauded or who is being defrauded are not part of the statute. Right. That's why it's ambiguous. The FDA was enacted to remedy the weaker consumer drug protections of the 1906 Pure Food and Drug Act. And in so doing, Congress created a misdemeanor for misbranding foods, drugs, and cosmetics that did not require such a proof of intent, but also a felony. It doesn't require any intent at all. Right. So that's the misdemeanor. So the intent to defraud doesn't say who. That's why we have to look at, and courts consider, they've said, the context of the statute, of the language in the statute, and also the statute as a whole. Yeah, but doesn't, and when I look at the statute as a whole, I see there's a misdemeanor. It's a strict liability offense. If you are not even negligent, if you take reasonable steps as a manufacturer or shipper of drugs, to see that they're all properly labeled and not adulterated, but some stuff happens, and without any culpability at all, adulterated or misbranded drugs go out, you are guilty of a crime. Well, I think it still has to be willful. Okay? Now, that wasn't an issue in this case. That's not what Daughter Wife says. The Supreme Court says it's a strict liability offense. You have to willfully ship it. You have to know you're shipping a drug, but once you've shipped it, if it turns out to be adulterated or it turns out to be mislabeled, you are guilty of a misdemeanor crime. So I'm wondering why the context doesn't tell us that it would be odd for Congress to say, if that person is guilty of a misdemeanor, somebody who intentionally puts into the stream of commerce drugs that he knows are adulterated or misbranded and does it for an evil purpose to defraud or mislead, is guilty of the same misdemeanor. Why isn't that pretty much just saying, if it's intentional, it's up to a felony? Because what would the intent be? Why would you intentionally misbrand a drug if not to mislead or deceive somebody? Well, this court has said in Milstein that it can be consumers, intermediaries in the stream of commerce, or the FDA. Well, these are the people who were deceived in those cases, and we said that's good enough. That doesn't address the question of if it's somebody else that is intended to be deceived. Is there any case in which we have ever said there was an intent to mislead or deceive somebody, but that somebody wasn't good enough to fit the statute? Well, the court in the Milstein case and in the Balistria case in 1996, both adopted the rationale of the Mitcheltree case in the Tenth Circuit, where they specifically said it could not be state or local law enforcement. In that case, the police departments of Plano, Texas, and Oklahoma City. So it can't just be anybody. Is there any case in which we have ever held that a felony conviction under this statute was invalid, because the person who was intended to be misled, as proven by the evidence, or as the jury charge allowed to be convicted, was not good enough to qualify under the statute? That has not been raised in this way in the circuit. So this is the case. This is the case. Where this issue is raised. That's correct. And what I'm asking is why on earth would we assume that Congress intended that someone who intentionally, with intent to deceive members of the public of some sort, intentionally misbrands, mislabels, adulterates drugs, and puts them in the stream of commerce, is guilty of the same misdemeanor crime of somebody who did that essentially by accident? It's because when this law was enacted, Congress was not thinking about horse racing. That was the most popular sport. So why would Congress have to be thinking about horse racing? Congress is thinking about what is the distinguishing factor between a strict liability misdemeanor and something that ought to be a felony, and not a very dramatic felony. We're not talking about 25-year prison sentences or anything. Why would they think that the distinguishing factor isn't just intent? It's intent to defraud somebody. They didn't have to be thinking about horses. They were thinking about protecting consumers. Yes, exactly. But they're thinking about this by keeping the drugs out of the stream of commerce. Yes. So important to do that, that it's an actual crime if you had no evil intent at all. But if you do have an evil intent, the statute says if you have an intent to deceive or to mislead or defraud, then it's a felony. Why do I need to go any further? The plain language says that, and there's a perfectly good rationale for why Congress would need that. Section 393B says that the FDA is to protect public health. That's the charge of the FDA. That's part of the statute. It's about protection of consumers. What's that? So veterinary drugs are totally excluded? No, but we're talking about the protection of the consumers. That is the people who buy or obtain the drugs in this case, the trainers, not the horses, but the consumers in this case. So if the consumer knows that this is being deliberately mislabeled, that there are no instructions going on with it that would make it safe, and they're sitting in their medicine cabinet, these drugs, it can't be a felony, notwithstanding that the public is endangered by that. It can't be this felony. It could be prosecuted in state court. It can't be this felony. This is the government taking a crime and trying to shoehorn this conduct into it. Into the plain language of the statute. Which is ambiguous. Can I throw in an alternate sort of framework? I've struggled a little bit with the notion, and cases do. They talk about who can be the subject of this. I'm wondering, and again, this would be a different framework from my colleague, but I'm wondering whether what we ought to be looking for is not who is misled or defrauded, but whether the intent to mislead or defraud that would elevate it to the felony is connected in some way to the actual misbranding violation. So in other words, the conversation about who is defrauded might be an imprecise way of getting at whether the crime that's being committed here, mislabeling let's say, is the crime that gave rise to the fraud that we're talking about. I'm drawing a little bit from the Mitchell-Terry case in that, but also the jury instructions here. Yes, Your Honor. Picking up on what Your Honor is saying, it's the, did this person develop these drugs or misbrand them, do all of the things that would be considered the creation of, say, a new animal drug, with the intent to defraud or deceive the FDA or the consumers, which is the Consumer Protection Statute. There were legion cases from the Supreme Court of the United States that say that. And the Robinson case, or Robeson case, tells us we're going to look at the language of the statute, that is, what they were doing with the intent to defraud or deceive, which is what the court is saying. And also, what was the purpose of this statute? The purpose of the statute was to protect consumers. And all the cases from all the circuits say, if the intention was to defraud consumers or maybe intermediaries in the stream of interstate commerce, then that would be... But as soon as you get the FDA, as soon as you concede that defrauding the FDA could be within the scope of the statute, even if there's not a single consumer defrauded, doesn't that sort of open up the theory a little bit? Well, it opens it up to the extent that looking at the statute, there were requirements in the statute for things that have to be done with the FDA, such as seeking approval for drugs. So that's why courts have extended it to the FDA itself, because the FDA is engaged in consumer protection regulation. So that's why the statute itself, looking at the statute as a whole, requires that a person not act with the intent to deceive or defraud consumers, because the FDA is the consumer protection agency. What if this were a human drug, not a horse drug, and the defendant provided a drug that had never been approved by the FDA, that he knew would not be approved by the FDA without some kind of further safety testing, to a doctor who knows perfectly well everything that the manufacturer of the drug knows, but the human consumer, the person into whom the drugs are injected, does not know what this drug is and is misled? Would that be an intent to mislead? Yes, because there the consumer is the person who's receiving the drug. So that's the limitation of consumer in your reading? It has to be the person who takes the drug. So I'm thinking it's a human drug, but what it causes is extreme agitation and violence in the person who takes it. What if I'm the victim of that person's violence? Am I a consumer designed to be protected? Because I don't think there can be a dispute that some consumers, meaning sort of members of the public engaging in commerce, were affected here. You mean consumed literally in the… That's right. Only the person taking the drug is protected by the FDA Act. This law was enacted because there were patent medicines that were poisoning people. Right, but that's – I just want to be clear. Your position is the only people this protects are those who ingest the drugs personally. The ultimate consumers. So if this were injected into a person, that person would be someone who was defrauded, even if the doctor who purchased the drug was in cahoots. That's right. The problem here is it's a horse. Horses cannot be misled. Horses cannot be defrauded. But the horses and the various people who work with the horses and the people against whom the horses compete are all affected by this. They may be affected, but it's the trainers who bought the drugs who are the consumers. I guess this gets me back to – I mean, I guess a horse cannot be deceived, but a horse can be harmed by mislabeled, misbranded, adulterated drugs. So you're saying that veterinary drugs are basically out as long as the person who does the injecting and purchases the drug knows that this is a highly dangerous thing. What I'm saying is that the consumers of those drugs are the people, the owners of, say, a pet or the owners of the horses. And this has been horse racers, the people who own those horses. Those are the people who would be potentially defrauded. So if this is a pet, the owner of the pet isn't told, but the vet knows that this is a – No, the owner of the pet could be defrauded. Even if the vet is telling the owner that this is perfectly good for your dog and he misleads it, then that's misbranded drugs, and the person who's the ultimate consumer is the owner of the pet in that circumstance. So, again, if this were a human drug and a baseball player gets injected with it and the player knows that this is dangerous and will put him in violation of the rules under which his contract – that are contained in his contract, the fact that everyone's being deceived in the world about the performance-enhancing drug, that just can't be a felony. Under this statute, your Honor. It doesn't mean it can't be some other felony. But we're talking about this statute. This is a statute which is intended to protect the public against the release of dangerous, adulterated, misbranded drugs. That's about public – It seems to me the public is – It's the public health. The public health, not generally the public. In 393, they're talking about public health. And this drug is now sitting in the medicine cabinet of a baseball player, and it's labeled aspirin, but it's really some highly dangerous steroid drug. And the baseball player's child or spouse or a visitor sees it, says, I have a headache, I'll take an aspirin. That person is not intended to be protected by this statute. This is about putting adulterated drugs out in the stream of commerce where other people are going to have access to them. Why aren't those people to be protected? This statute is a consumer protection statute. Horse racing commissions are not consumers. So it's not about whether some other circumstance. This is about racing commissions. I guess I keep coming back to the fact that if Congress wanted to so limit it, it could say so. It says intent to defraud or mislead. It doesn't limit it to anybody, and there is a perfectly good rationale for why Congress would want that to be so, because the intent to mislead or defraud is something that quite obviously distinguishes a misdemeanor from a felony, a strict liability crime from something that is way more serious. And I'm having a lot of trouble understanding why it could be the case that we must read into this statute some language that Congress did not put there because their primary interest or their primary thought was the first guy who's going to get the misbranded drug, not somebody down the road who might find and encounter this in someone's medicine cabinet. Because it's the statutory purpose of the FDCA that you have to refer to in determining and even determining whether the statute is ambiguous. It's not. And this is why in the Fisher case and in other cases the Supreme Court said it's not whether we disapprove of the conduct of the defendant. It's whether the statute reaches them. So it's not a question. I'm not asking you to give your imprimatur to the conduct alleged in the case. What we are arguing is that it doesn't reach this conduct. We're talking about notice and vagueness. One thing that's interesting here is that clearly on notice that putting misbranded or unlabeled or unapproved drugs into the stream of commerce including for veterinary drugs is illegal. The only thing that could be not adequately noticed is whether it's a felony or not, right?  So that feels a little different. I think we have some cases that talk about how that feels a little different. How it's not that you're not on notice that this is criminal. You're simply not on notice of the potential penalty. That is correct. But courts have recognized that jumping somebody's statutory maximum, like in the ACCA cases, is a cause for the court to have some concern. When all of a sudden the penalty goes from a year to, in this case, five or ten years or more, now there's another reason to look at this. What is vague about it? Pardon me? What is vague about it? Why is it vague to say if you do this with intent to mislead, period, you are guilty of a felony? Why is that vague? It's vague because it doesn't say who will be misled. Well, there are statutes that do say, right? There are statutes that say it's a crime to defraud a bank, right? That's a specific statute. It's different from a general fraud statute. But there are general fraud statutes that basically say it's a mail fraud or wire fraud statute, that if you concoct a scheme to defraud, it doesn't say whom. It just says to defraud. Is there anything vague about that? Well, it was cabined by the Supreme Court that it has to be an actual property interest. You bet. That's what makes it a fraud. But this is not that because it doesn't say only defraud. It says mislead or deceive, right? Mislead or defraud. Deceive or defraud. Right. So why is there something vague about saying if you do this with the intent to deceive, period, full stop, you're guilty of a felony? Because when you look at what the act of doing the misbranding with the intent to deceive. So you have to look at that together. And Dr. Fishman was able to make a defense under the jury instructions, as I read it, that he didn't intend to deceive anybody.  The defense that he was proffering was that defrauding state racing commissions and using performance enhancing drugs to gain advantage during these horse races did not violate the statute. Right. And the court overruled that. Yes, of course. It said, no, we're not allowing that. Because deceive, there's nothing vague about saying if you do this thing, the very thing that the statute prohibits, the very thing that he did with intent to deceive, you are guilty of a crime. Well, it's defraud of the state. It's defraud of the state. Excuse me. You're not telling me, are you, that there was any ambiguity about whether he had an intent to deceive people? This was all done secretively? It can't be just any people, Your Honor. Okay. That's the end of the story. Yes, it is. If I can jump in. It's not to feed a fed horse here, but I think we got the argument on. I tried not to do any of that. Yeah, yeah. I'd like, unless folks have other questions on this, I want to give you a few minutes to talk about the issues relating to restitution and forfeiture. Yes. So, okay, first, turning to restitution. Once the sentencing court found that actual loss could not be quantified, there could be no restitution. That's the Zangari case. It was recognized by the district court, and then they went on to say that although they couldn't determine actual loss reasonably, they're going to determine it anyway, and so they said you have to pay the racetracks almost $26 million. When there was no pecuniary harm to those tracks, those tracks were obligated to pay the prize money anyway. And the sentencing court— There was a pecuniary loss to somebody, though, right? Maybe not the racetracks. Yeah, there was the other question of proximate cause, whether they could even show that, which was also raised. So because they have to show in fact or but-for causation and legal causation, proximate causation, there was an objection that that wasn't shown, which was overruled. That's a factual determination. It is a factual determination. What I'm puzzled about is the district court, it seems to me, did two contradictory things, right? If we get past your argument that there was no loss to anybody here that was proximately caused and conclude that there was a loss to somebody, the court then goes to do two different things. With respect to restitution, the court says I can calculate a loss, I can calculate the amount, and I can calculate who bore the loss, whether correctly or not. Then when it comes time to do the— The guidelines. I'm sorry? The guidelines. Well, but substituting the gain for the loss— Yes. I guess for guidelines purposes, and I suppose—well, okay, for guidelines purposes. We substitute the gain for the loss because I can't figure out what the actual loss is. Right. And that benefited you because it went down from $25 million, which had otherwise been calculated as the loss, to $13 or $10 or something like that that was his gain. Well, I wasn't trial counsel. No, I know. But it benefited your client to have the gain substituted for the loss. But it was still wrong. It was still wrong because the premise of that argument is that it was not sufficiently proven that the horses who won wouldn't have won anyway. Right. Okay. And that other horses weren't also doped. They were saying it was pervasive. They didn't know that the specific horses were doped aside from one race. They weren't able to prove that. They weren't able to prove that the other horses in the race were also not doped. And they weren't able to prove that the horse won the race because he was doped. So there was a proximate causation problem, but that was brushed aside. And when it came to— Well, it was not brushed aside. There was a finding made that Mr. Navarro's testimony was that this is how much he won corruptly. It wasn't really testimony. It was just his concession to get a five-year charge. I get why there's a credibility issue there, but that credibility issue is for the district court to decide. I understand the argument. Maybe if I were the district judge, I would be skeptical of Navarro's concession. But it is a concession by a co-conspirator. Hearsay is admissible for this purpose, and that was in there. I understand your point about this shouldn't be prejudiced. That guy was going to get—he's going to get deported to Panama and will never have to pay a dime of this. He agreed to this. He could have agreed to $26 billion. That's the problem with restitution all around the block, is that half the time the worst, most culpable people are never going to have to pay it. For that matter, it's not clear to me that Dr. Fishman is ever going to pay any of this. We spend a lot of time on it because it's a legal obligation and we have to do it. But that's inherent. That's baked into the— It's meaningful to Dr. Fishman. Yeah. And what I would also say is that the government conceded that these tracts would have had to pay that prize money out to somebody else, and then they came up with this clearinghouse argument. I don't know if you saw that in their brief. But that was never presented, in my case, to Judge Vescoso, this clearinghouse argument. And the court didn't order the racetracks to act as a clearinghouse, and the racetracks have no legal obligation to do that. What would be the remedy here if—suppose I thought, for example, that there's sufficient probable cause, sufficient preponderance of the evidence to conclude that just as Dr. Fishman claimed, just as Mr. Navarro claimed in their communications, these drugs are wonder drugs. The horses run like crazy. They win races they would never have won. And that came out to the tune of $25 million. Suppose I believe that, but I thought you are right that the racetracks aren't the people who lose. What's the remedy? Does that invalidate the restitution altogether? Yes, because there's no pecuniary loss to these racetracks. Well, but does that just mean that there should be a remand to determine who really did bear the losses and that the government has to come up with real victims, just like they do in most fraud cases, and not somebody who is going to be given a large sum of money in the expectation that that person will then distribute it to the real victims? Well, I just want to point out that there would be—that would be an improper delegation of judicial authority to ask these racetracks to do that anyway. Yes, suppose I agreed with you on that. Does that mean that the district court erred in ordering restitution, period, or does that mean that the district court just got the victims wrong and there should be a different showing made to the court of who's the losing horse, not to the racetrack? I think that the government's argument there, their ship has sailed. They had an opportunity to seek restitution for the people that they said were the victims, and they shouldn't be given another opportunity to do that. Also, they've got a nice chunk of money in the forfeiture, assuming that that's okay, but that's another thing that you're challenging, and that money can be used to help victims. That's what the government often uses it for. Well, turning to forfeiture, I'm glad you brought that up because, Your Honors, in this case, we know what criminal forfeitures are. They're in a statute, 982, and we know what civil forfeitures are, and there's a lot of them. They were listed in some of the papers below. There are hundreds of them, but the FDCA is not in there, and the government is relying on a section of Title 28 called 2461C. You may have heard of it. It's the substitute assets provision. It permits you to use civil forfeitures to seek money judgments and substitute assets, but the thing is, when that was enacted, Congress enacted some exemptions from civil forfeitures, specifically the FDCA, and it makes sense because in 334D, it provides for the seizure and destruction of tainted foods, drugs, and cosmetics to keep them out of the stream of commerce. It doesn't matter whether you have an innocent owner defense as to those tainted foods, drugs, or cosmetics because they are to be seized under a libel of information and then destroyed at the dock or at the warehouse where they are by the government. But, Counsel, was the actual appropriateness at all of forfeiture, the legality of forfeiture, per se, was that preserved? I mean, the way I read the transcript is that there's an indication that defendants' counsel, who was prior counsel, reserved the right to contest the amount of the forfeiture and did not at that point raise the question of whether forfeiture was permissible at all. That's 100% correct, but they didn't know about this challenge. During the time period with which a challenge to the preliminary preliminary order, initial preliminary order of forfeiture, was existent, they retained new counsel who timely filed a motion that no forfeiture is permitted. But when you say they weren't aware of this, you mean the prior counsel? Because we see this all the time in the trial court, right, that someone changes counsel and has new arguments, and that doesn't always mean they can be raised. But when you say they didn't know about the challenge, you mean the prior lawyers didn't think of it, the new lawyers did? Not that something evolved in the Supreme Court? No, that's right. That's right. But what the rule requires is that the argument be presented to the district court in time for the district court to rule on it. And here there were all kinds of arguments. There were motion papers. There were reply papers. There were papers in advance of the hearing. There were papers after the hearing. There was a motion for reconsideration. The district court fully considered all of these arguments. That is preservation. Yeah, the district court said you're too late, and therefore it's not preserved for me, although the district court still had all the information, had the time and thought, and put the thought in and actually ruled substantively as well, ruled against you. Yes. But considered these arguments and made a ruling. And so your argument is basically this was presented to the district court, and there's no specific statute rule something that says if it's kind of, you know, we're not going to challenge that at an earlier stage in the district court, and then either that lawyer or a new lawyer comes in while there's still time to do something about it and says, you know, we weren't going to challenge this, but now we've done some more thinking. Here's an issue that we do want to raise. It's time for the district court to actually consider it and rule on it. Because it was part of the sentencing proceeding. That should be available to us is what you're saying. That's preserved for the court of appeals. It's important to note that the advisory notes to the enactment of the rule show that sentencing includes forfeiture. That forfeiture is part of sentencing. You know, and this was enacted in 2000 at the same time that CAFR was enacted. Because it was anticipated that these forfeiture proceedings would be part of sentencing. And so a forfeiture hearing was held in March of 2023 at which these issues, that is the legality of forfeiture and among other issues, were fully vetted orally before the district court and also in all kinds of papers. So the purpose of this preservation rule is to ensure that I'm not bringing it to the court of appeals for the first time. Does the court have any further questions for me? Appreciate your argument. Thank you. Thank you. Good morning and may it please the court. Sarah Mortazavi for the government. I also represented the government below at both trials and at sentencing. Your Honor, I'd like to pick up on the discussion of restitution and the guidelines calculation just to explain what this court alighted to as a seeming contradiction in the district court's conclusion there. Because we don't believe that there was one. Now the district court found that for purposes of calculating the offense level, because counts one and two were grouped, the entirety of the loss could not be ascertained. However, because it was available to the district court under the guidelines, the district court was permitted to resort to gain and that inured to Seth Fishman's benefit. Yeah. But why – I'm still – and now this is obviously not something easy for the defendant to raise because it sounds like an argument that actually the number should have been higher. But if you can't calculate the true total loss because you have a number for count one, but you don't have a number for count two or whatever the counts were, but you already know there's at least $25 million and you just can't get something else, why do you then revert to gain and bring the number down to 13? This doesn't make any sense to me. Well, there's no – There's no difference, right? Is that the point that under the guideline both the 25 number and the 13 or 10 or whatever it was number for the gain are in the same category, so the guideline calculation turns out to be the same? Is that the point? They actually would have been different. It would have been a 22-point enhancement under the $25.8 million loss associated with count one versus his gain was at $13 million, which was a 20-point enhancement. The district court ultimately found that that wouldn't have made a difference. Even if she had accepted the count one calculation of the losses and just went with that number without resorting to gain, she would have arrived at the exact same sentence. So really it's academic. So it's all academic is the point. That's correct. And that contradiction is academic anyway to the extent there is one. To the extent there is one, it's academic. And again, because for the offense level the district court was permitted to resort to gain and because that was a more conservative figure that fell to Seth Fishman's benefit, that was an appropriate decision. Now for restitution, the district court was not permitted to resort to gain and did not resort to gain. And the district court arrived at the number of 25.8 million loss associated with count one. I'll note that the government had actually asked the district court to impose an additional approximately $11 million in loss associated with count two, and the district court rejected that, found that she could not determine the loss with respect to count two, could ask to count one and impose those. That was entirely within her discretion and certainly a logical parsing of the differences between restitution and the offense level calculation. So I just have a fundamental question about the restitution framework here, and it echoes of the conversation about the scope of the statute. But I'm trying to figure out how clearly the competitors have suffered losses as a result of the violation of the rules of the game of the horse race and whatever laws enforce those rules. I'm struggling with the notion that their losses from that violation equate to losses associated with mislabeling and misbranding and adulterating a drug or introducing a drug that's not FDA approved. I'm not asking about whether that's enough to get you to the fraud, but I'm just trying to figure out how that leap happened, or was there just not an objection so we don't have any reasoning for it? Well, there wasn't an objection, but I'm also happy to answer the question. And the district court discussed this at length in discussing the guidelines calculation, which is that this conspiracy was not only about doping horses, it was also about concealing the doping of horses through things like untestable bespoke drugs that were to be sold to specific customer lines, including mislabeling of drugs so it didn't appear as if they were going to be used for doping. All of this was of a piece with the conspiracy, and those directly relate to the misbranding activity. So, for example, developing a bespoke drug that is designed to dope a horse, that is an unapproved drug that is misbranded. That also serves the purpose of the overall goals of the conspiracy, which is to win horse races and not get caught. So if they violate the federal statute, and in the context of violating the federal statute, their activities are designed to violate state laws, then the victims that are protected by those state laws become, by some sort of commutative property of victimhood, victims of the federal. Well, we would argue that they are, in fact, victims of the federal conspiracy, because, again, the entire purpose of the conspiracy was to put into the stream of commerce drugs that would not be related back to Seth Fishman and would not uncover the doping activity and the drug distribution. Going back to my colleague's example before, which was brilliant, you introduce an unapproved drug. The person who takes it knows it's unapproved, is taking it as a stimulant or something, but it causes the person to go bonkers and they injure a third party. Is that third party eligible for restitution as directly and proximately harmed from the misbranding activity? It is if that was the purpose. So, in other words, if someone were to have taken a steroid because they know that they are about to enter into a fight with somebody else and the person supplies them with that steroid because it's going to make them stronger and more likely to beat up their competitor, they know that the direct and proximate cause of providing that drug, which will make that intermediary consumer stronger, is to cause harm to the opponent. That is, by extension, what happened here. The entire purpose of the scheme was to deprive other competitors of purse winnings to which they were entitled by having these horses get these performance-enhancing drugs and perform beyond their natural ability. Now, the other component of this scheme, as I mentioned, was deception. Because these trainers would have been suspended if these activities had come to light, the horses would have been disqualified if they tested positive on a drug test or even if an adulterated bottle had been found in a barn. And so the misbranding activity designed to shield Seth Fishman and shield his consumers from accountability furthered the conspiracy, irrespective of whether the actual drugs worked in the way they were meant to. I'd like to address the questions that this court has raised about the appropriateness of imposing restitution and demanding payment to the racetracks as opposed to the competitors. I think the reason for that, Your Honor, is because, as this court has recognized in part, which in turn relied on Berardini, is that the district court has discretion to deal with practical, common-sense solutions around restitution, which can be a tricky issue. And complex fraudsters should not get the benefit of running a particularly complicated fraud by earning a windfall just because restitution is difficult to calculate. Right, but why do the racetracks get a windfall? And is there no concern about that? In other words, at least as I read the brief, the argument you're relying on now is that the racetracks can serve as a clearinghouse. It's sort of like as if they were class-action plaintiff's lawyers who had brought some action and get a sum of money and now hire some administrator to give it out to the general public. But there are checks and balances in the court's supervision of that. Where, as far as I can see, the restitution judgment provides this money goes to the racetracks, period, full stop. It doesn't say this is a proxy for giving it to other people. I don't know that there's anything in the record that I could find anyway that says that the losing horse owners have filed lots of claims against these racetracks and the racetracks are in the process of having to pay something to them. We're just assuming that we give it to them and they're going to see that it gets to the real victims? I have two responses to that, Your Honor. The first is the mechanism that was set up here is comparable to that in Woodard, which was decided by the 11th Circuit, where the Atlanta Police Department was holding onto property for others. That property was stolen, and when restitution was ordered, the circuit found it appropriate to impose restitution to go back to the police department to then distribute to the rightful owners. Which is at least a government entity. We can hope that one police department is better able to do that than 25 or 30 independent racetracks, right? Certainly, I recognize the distinction there that it was a government entity, not private parties. The racetracks, every time there is a horse disqualified, for example, is responsible for redistributing purse winnings. And so they serve that function in the ordinary course. They're equipped to serve that function here. And again, as this court has recognized in Park and Berardini, the district court has some discretion in determining how restitution is appropriately repaid. Is there a list in the record? I know we have this issue about unsealing an exhibit, but is there a list of the races? I know that we've got this total figure that was offered, but is there actually a list anywhere in the record that would tell the court who all the individual competitors were who would have those claims? So the restitution order just sets forth the amount. The schedule of victims that is under seal and attached to that order lists the amounts due to each racetrack. The various other competitors are numerous. It's a matter of public record, but it would be something that needed to be determined. But it is known, and as I mentioned, a matter of public record, who these other competitors were. But it's not a matter of public record how much restitution was paid to each of the racetracks or is scheduled to be paid. So one concern I have about the clearinghouse theory is the government's opposition to the motion to unseal that chart. It's hard for me to see that if a fellow who placed a bet on the race or another, I'm not sure who else would be a potential victim, but say the guy who came in second, right, who believes he had a right to the purse, if it's private and secret, which even tracks, not just which races the government believes were affected, but which tracks were affected and to what degree. How are people supposed to know? As Judge Lynch pointed out, we have these big fraud cases where we appoint a special master or plaintiff's counsel appoints someone. How are people going to know to engage in this clearinghouse activity? And also I'll ask along those lines, under the Victim and Witnesses Rights Act, under the VWRA, who did the government notice as victims in this case? Only the racetracks? Other people? Nobody at all? I'm curious because you all get to define at some level who is victims when you're doing this process, and that notification is a key sign of who you believe to be a victim. So if you noticed only the tracks and you're ordering money to be given only to the tracks, it's hard to now accept your argument that you're doing that as a clearinghouse and understanding or acknowledging or agreeing that the ultimate victims may be other people. As to notification, it's not on the record. I can't speak to all the parties that were notified. Certainly the state racing commissions were noticed because they were the— You have trial counsel. I mean, when you have a sentencing, right, the act requires notice to anyone who qualifies as a victim. And I think the government made an affirmative decision not to seek or tender more victims enhancement here. So there was discussion and thought about who qualified as a victim. That matters in restitution, and I'm trying to figure out how all of that plays together into your new theory of it's okay to pay the racetracks because to the extent there are other victims, they're going to get paid by the racetracks. And I have several responses to that, Your Honor. Certainly, as I mentioned, the state gaming commissions were noticed at a minimum. Now, above that, I cannot speak definitively without going back to the record. I don't know it sitting here today. In terms of the tender more victim enhancement, the reason that that enhancement did not apply to the guidelines offense calculation was because the court was resorting to gain, not loss. So in the context of the guidelines, that was inapplicable. Now, with respect to the government's theory as to restitution and the racetracks serving as a clearinghouse, the government took that position. However, again, the district court has discretion in fashioning a restitution order. And an appropriate way to refashion that restitution order in this case would be to do exactly what the circuit contemplated in Park, for example, which was to have the government be the trustee as it sought to identify the victims. So if this court takes the view that the racetracks are an inappropriate clearinghouse or not the appropriate victim in this case, then certainly there is still someone who was victimized who lost money, and this court can allow the district court and the government an opportunity to make those victims whole over time. Is there anything in the restitution order that directs the racetrack victims to serve as a clearinghouse or to pass this money on as best they can to calculate who the people are who are entitled to revised purses? No, Your Honor. And what about all the, I mean, I'm just sort of thinking about this theory of victimhood. What about all the people who bet, right? I mean, this didn't just affect the purses. This affected the outcome of thousands and thousands and thousands of bets over time. Are they victims? They could potentially be victims, Your Honor, for purposes of calculating an exact restitution amount. Often courts, when faced with ambiguity, will go with the amount that is supported by a preponderance of the evidence and the amount that is calculable. Trying to get into the minds of bettors and recreating what those bets were could be difficult, and so this was an appropriate decision by the district court. Right, and presumably the tracks have records of who ran in what race and who won and who gets disqualified, and there's a process for that. I don't know that there was any way of finding, tracking back to who placed what bets. It's a very diffuse group. Your Honor is right to recognize that. Can I shift to the forfeiture statute? This question of is this a civil forfeiture statute was an interesting one, and I understand the preservation argument, but to get to the merits, I was trying to figure out, I was looking at the way this condemnation provision worked, and I grant you the word forfeiture appears in there once and is scattered about in some of the decisions, but I couldn't think of, and I think you'll have more experience than I do in this, an analog where one of the dispositions within the forfeiture statute is to bring the goods into compliance. Are there other places where there are statutes that we call civil forfeiture statutes where the government can use that statute to ask people to bring goods into compliance? I'm unaware, standing here today, of another statute that operates in that fashion. Obviously, there are statutes where there's contraband that can be forfeited in the context of drugs or guns, and this is somewhat comparable to that in that it talks about the destruction of these items. But irrespective of that, it is plain that Section 334 is a forfeiture statute, including because many district courts and circuit courts have approved of civil forfeiture actions on the basis of Section 334. Any time a statute authorizes you to seize the stuff, that's a forfeiture statute, regardless of how it's sort of captioned. And once you have that, then you can invoke the substitute property provision to get to cash. To be precise with Section 334, it approves of not only seizure but also condemnation. And that term condemnation appears in a different subsection where it is referred to as a forfeiture, and we've cited in our papers to a number of Second Circuit and even Supreme Court cases that have used those terms interchangeably. So Section 334 not only permits seizure but also forfeiture, which it terms condemnation, but as I said, there are scores of district court and circuit court opinions approving a forfeiture in the civil context under Section 334, which means it is a forfeiture statute. Once that is established, which the government believes is clear, then by virtue of the bridging statute, which is Section 2461C, any civil forfeiture statute can be brought into a criminal case. And once it's brought into a criminal case, then the procedures of Section 853 apply, including Section 853P, which allows for forfeiture money judgments when the underlying property has been forfeited. The problem with 853P is that that certainly seems to me to be something other than procedure. That's not just a procedure. That changes the substance of what can be forfeited, because essentially what you're saying here is that if there is contraband that is forfeitable to the government, where the consequence of that is either it will be destroyed or maybe in the case of mislabeled drugs, it just gets properly relabeled and then gets put back to effective use by people. We've really turned this now suddenly into the proceeds of selling adulterated and mislabeled drugs are now forfeitable, right? Because that's what's happening here when you substitute the value. Now, I try to think of how does this work in the narcotics statutes, and the answer is it's not – it doesn't. It's not necessary because proceeds are explicitly made forfeitable. But the effect of this interpretation of 853P is in the guise of procedure. By saying you can use the criminal forfeiture procedure, we have effectively changed what the forfeiture is. It's not just you find the adulterated drugs on the shipping dock and you seize them and burn them because they're terrible and will kill people and don't have any use anymore because of the way they were adulterated. But now we're going to calculate how many times this shipper, this manufacturer sold adulterated drugs and calculate the value of those drugs and how much they made by selling those. And that is now forfeitable because that's a substitute asset in place of the forfeitable contraband that we never interdicted. That's a pretty dramatic thing to happen in a statute that says you can use these procedures to enforce those forfeiture laws. So to respond to that, Your Honor, I don't believe that the statute – I understand the point that Your Honor is making that perhaps effectively the proceeds of selling drugs will now be forfeitable. But that's not what the statute actually forfeits. It's the value of those adulterated drugs. And the limitations or the distinction that your court is drawing does not appear in the interaction of the statutes that Congress passed. How do you calculate the value, by the way, if it's the value on the black market? Well, these drugs were accompanied by a drug list which listed prices. So there was a price that was placed on the drugs and we know a price that was paid for the drugs. So that is the price on the black market in effect, right? I mean the value of the drugs in a certain sense is nothing because it's contraband and it shouldn't be sold at all. But we're going back really and calculating how much money somebody made by selling these drugs because that's what they charged for them on a black market for a product that should never have been sold at all. So I'm just having trouble with the idea that a fundamentally procedural statute suddenly escalates dramatically what could ever have been forfeited under the civil forfeiture law. Because the civil forfeiture law as it stood does not talk about forfeiting proceeds or forfeiting dollars. It talks about forfeiting essentially contraband and instrumentalities of the crime, the machinery that was used to make the drugs. Those things can be forfeited. And it makes sense to talk about substitute assets in a way if the instrumentalities, for example, are no longer available to be forfeited. But I'm still having trouble how the substitution for the contraband is anything other than proceeds which is something that was not forfeitable before. Well, again, the distinction that Your Honor is drawing is not one that appears when you look at the plain language of the forfeiture statutes and how they interact. So there's no indication that Congress thought that this was inappropriate. The court may have reservations about it, but in the end, Congress determined that where the actual underlying property was dissipated, then one could substitute the money value for that. Essentially what you're saying is, look, this is what it does, and that's just the way it goes. Because once you say that the Food and Drug and Cosmetics Act authorizes a civil forfeiture – and I have a little trouble saying how it isn't, but okay – once you say that, then Section 20-whatever, 60-whatever, is saying you can inject that into a criminal case, follow the procedures of the criminal case, and those procedures include substituting the value for these hypothetical seizures that never happened. That's absolutely right, Your Honor. That's what is permitted when you read the statutes in tandem. And whether – the wisdom of that is beyond the ken of this court because – I don't understand that. Can you – you mentioned there's a lot of cases that use 334 in this context for a forfeiture. Are there cases, then, that have invoked the substitution of assets provision under the Food and Drug Act? So when I referred to those cases, Your Honor, I was talking about civil forfeiture cases. In which case they would not have had the provisions of Section 853, which only apply in criminal cases. So we don't have – there's not a case out there in which the substitution of property provision has been invoked in connection with forfeiture under the Food and Drug Act. Well, there are district court cases that have done that. No circuit case has done that. I will note that the Ninth Circuit in Valdez, in dealing with a civil forfeiture statute that was aimed at firearms and ammunition, arrived at the exact same conclusion that this – that the government is asking this court to draw. Which is that there were firearms. They were then sold. The value could be determined. And in a criminal case, the Ninth Circuit found that it was appropriate to order a forfeiture money judgment for the value of the guns that had been sold. That was the current actual value. And as Judge Lynch pointed out, these drugs, to the extent there was still a bunch in the warehouse, have no current actual value. Right? I've seen those gun cases, right? Where you sell the guns at the end of the case, the person can no longer have them, and they forfeit the money. That's showing the actual value of the gun on the legal market that exists today. As opposed to really just taking the profits earned from the prior sale. There is a difference there, right, in terms of the measure? Well, I just want to make sure that I'm precise. In the Valdez case, there was an actual firearm. The statute didn't apply to proceeds of the sales of the firearm. It was to the firearm itself, and that's what was encompassed. But when you're determining what the value is, you can determine that by saying, this is a gun. I've sold the gun. I got $500. That's $500. Whereas the drugs in this case, there's no current value to them. Well, the drugs in that case, when they were sold, had a value to the purchaser because they paid a particular amount for those drugs. And as I mentioned, there are price lists that the defendant – to rely not on the market value but on the black market value, on the illegal value, that assuming we sold these illegally, this is what they would command, and that is what becomes forfeitable in the substitution. That's correct. That is essentially the government's argument. And again, forfeiture is intended to be punitive, and Section 8530 dictates that it should be interpreted expansively. The point is to punish people who would put these drugs into the stream of commerce, and this is an appropriate way of effectuating some form of punishment. Your Honor, I haven't touched on any questions related to the Food, Drug, and Cosmetic Act, but unless this court has specific questions, I'm happy to rest on our submission. Thank you. Thank you. Mr. Golstader, we're going to hold you to three minutes here. I got it. I got it. No problem. Your Honors, first, since we're talking about forfeiture, it's important for the court to bear in mind that condemnation is a type of forfeiture, but it is not a civil forfeiture as defined in the statutes. No matter how much the government wants to dress this up as though that were the case and point to district court cases to which counsel didn't object, that didn't make the arguments that we are making to this court, yes, it's complicated, but it is statutory. There's a list of civil forfeitures, and FDCA is not there. But wait, there's more. There's a specific statute that says it's not civil forfeiture. End of story. That statute saw fit to expressly say this section doesn't apply to that, suggests almost that but for that exclusion it would fall in the general category of civil forfeiture. The reason that they did that was because they were enacting new sections, such as the innocent owner defense, to deal with some of the problems with civil forfeiture and also provide the substitute asset provision or money judgment provision and 2461C. But they're saying, we just want to be clear, these particular five sets of statutes are not included. Before 2000, there was no separate sort of civil forfeitures. Condemnations were not subject to criminal forfeiture. They were only condemnations. And so the law didn't change in that regard. Now, it's interesting that the government keeps talking about value, and that's because proceeds can't apply. They want to keep avoiding proceeds because they're trying to say that this is value instead of proceeds because really proceeds can't apply. And so the government's argument is sort of other courts where people didn't object properly, and so therefore it's okay. But it's not. It's statutory. It may be expansive when it applies, but when it doesn't apply, it's illegal. All of the modern civil forfeiture statutes invoke, or at least the legislative history tends to invoke, the customs and things like food and drugs, all of those kinds of things are the basis for civil forfeiture. They're saying, we have done this from time immemorial, and now we're going to do it better. We're going to make it more general. We're going to have these various kinds of provisions for it. It's a little hard for me to say that these kinds of statutes on which the whole civil forfeiture idea is modeled are not effectively civil forfeiture statutes. Well, they might be a type of civil forfeiture. This is what I'm saying. But they're not the type of civil forfeiture statute that is named a civil forfeiture statute for the purpose of civil forfeiture which allows these kinds of things. Does the label matter? Because 2461 says, if a person is charged in a criminal case with a violation of an act of Congress for which the civil or criminal forfeiture of property is authorized, it doesn't say civil forfeiture statutes. It says any statute that authorizes a civil forfeiture. I have trouble seeing why the FDCA is not such a thing. Because it was enacted at the same time and it has to be considered as the statute as a whole for the exemptions in 983. There are exemptions. And those are exemptions from particular provisions of the civil and criminal forfeiture laws, right? They're not – and this particular thing with the substitute assets is not one of the things that is exempted. But the civil forfeitures are defined in 981. And it's not in there. So you can't make it up that it should be in there when it's not there. Those are the list of civil forfeitures Congress had enacted. So I just wanted to turn for a moment to this business of the restitution just to say that proximate causation was argued. And, you know, the council did argue that you couldn't tell which of the horses won because of the use of performance-enhancing drugs. And argued that the government hadn't carried the burden of proof on that. And the government still is just saying, well, just sort of take our word for it. Okay, we'll wrap it up. Well, that's what I wanted to say. Okay, perfect. Really appreciate it. Thank you all. It was a long slog. Thank you for your attentive arguments. We'll take it under advisement.